## TAYLOR *v.* GEORGIA MARBLE COMPANY.

1. An agent or employee of a corporation who, in the discharge of his general duties, has charge of a particular branch or department of the corporation's business as to which he acts in the capacity of a vice-principal, and as such employs and has control of all of the subordinate servants who are to work under him, is, as to one of these whose duty it is to obey his orders and who takes his orders from no other source, a *quasi* master, and not a fellow-servant in the sense that the subordinate will have no right of action against the corporation for personal injuries caused without fault on his part by the negligence of the superior.

2. It was error in the present case to sustain the defendant's demurrer to the plaintiff's declaration.

August 18, 1896.

Action for damages. Before Judge Gober. Pickens superior court. September term, 1895.

The petition as amended alleged: On November 14, 1894, defendant, though having no charter as a railroad company of Georgia, was acting as a railroad company, doing business as such in Pickens county, engaged in run-

ning and operating a railroad and running a train of cars thereon, and was engaged in the business of hauling freight thereon for itself and others. Plaintiff was in its employment as brakeman and car-coupler on said train. One McHan was the engineer of the train, and was in sole charge thereof for defendant and placed in charge there of by it, and had by its direction entire control and management of the train and of plaintiff as brakeman and coupler. Plaintiff was a subordinate employee under the direction and control of McHan, as defendant's agent, and it was his duty to obey McHan's orders. McHan ordered him, whenever the train went on side-tracks on which cars were standing, to always go ahead and get between the cars and the approaching train and couple such cars to the train. For some months plaintiff had been acting as car-coupler on the train under McHan and had always obeyed said order, and had very frequently, and as often as the train passed onto a side-track on which cars were standing, gone in between such cars and the approaching train and coupled the cars to the approaching train, and this had always been done with safety, as the engineer would slow up the train just before reaching the car, as it was his duty to do. It had been the invariable custom of the engineer, and was his duty, whenever plaintiff went between the train and the car to couple the two together, to wait for a signal from plaintiff to move after the train and car came together, before the engineer caused the train to run any further. On said date the train having passed onto a side-track of defendant's railroad, on which a car was standing, plaintiff, without fault or negligence on his part, but in the discharge of his duty and in accordance with the orders and instructions of McHan, passed between the car and the approaching train, for the purpose of coupling the car to the train, fully believing that McHan would adopt the usual precaution of slowing up the train as it approached the car; but McHan, well knowing that plaintiff had gone between the car and

33

the train for the purpose of coupling the two together and was then and there between the car and the train for that purpose, negligently and carelessly ran the train at great and unusual and unlawful speed against the car, whereby plaintiff was unable for lack of time to withdraw himself, and his hand and arm were caught between the car and the train and held with such force that he was unable to extricate himself and they were broken, mangled and crushed. Instead of waiting, as was his custom and duty before proceeding further, for the signal from plaintiff to move, McHan negligently and carelessly ran the train and the car for a considerable distance along the track, with plaintiff's hand and arm pressed and fastened between the two, grinding and lacerating the flesh and bones of the hand and arm between the car and train, and producing the most excruciating torture to plaintiff. By reason of the force with which they were first crushed and the grinding to which they were so subjected, plaintiff's hand and arm were so injured that afterwards it became necessary to amputate the hand and portion of the arm. He was at the time a stout, healthy young man, twenty-eight years old, and earning $30 a month. By the loss of his arm and hand he has been rendered completely helpless and unable to earn a living, to his damage $10,000. By reason of defendant's negligence he suffered great bodily pain, not only at the time of the occurrence, but while sick from the effects of the injury, to his damage $5,000. He was put to great expense for medical treatment and nursing, to his damage $500, and he was damaged by loss of time $500. When the injury was received, defendant had run the train into the yard of the Southern Marble Company, for the purpose of hauling a car of freight for the latter, and was thus engaged in the business of a common carrier. When the train ran on the side-track approaching the cars standing thereon, in obedience to the orders as aforesaid of the en-

gineer plaintiff prepared to run in between the train and the car it was approaching, in order to couple the two; but the engineer rushed the train so rapidly together, plaintiff did not go in between the two at first, it being impossible to do so, but the cars standing on the track being struck forward by the collision left an opening between them and the train, and he ran in to couple the same together when they should meet, but the cars, having been struck and kicked up, returned to the train still approaching them, and the speed of the train and of the returning cars combined caused them to come together so rapidly that plaintiff, who had run in between in obedience to orders and in the discharge of his duty, did not have time to realize his danger until too late, and did not have any reason to apprehend that the collision would be so sudden, and being already by said train with his hand and arm between the cars, "and being seized the link which is used to couple the cars together and which was attached to the train, introduced the link into the drawhead of the car on the side-track," and sought to withdraw his hand, but the contact of the train and car was so sudden that in withdrawing his hand it was caught between the bumpers, which are between the drawheads and the outside of the car, and it was impossible to withdraw his hand and arm from the position they were necessarily in in coupling the cars, without passing them between said bumpers which projected from the cars.    The engineer's real object was to kick the cars on the side-track and not to couple to them, but he did not notify plaintiff of this, and plaintiff did not know it, but supposed it was his duty to carry out his order, and the engineer was negligent in not notifying plaintiff of his said intention.    The engineer employed all the hands wanted with said road, and had employed plaintiff.    If the engineer, after the cars were coupled, had waited for signal before proceeding, plaintiff could and would have been released from his perilous condition and the injury to him would not have been so great.

His hand had been caught about the wrist between the bumpers, but on account of the engineer continuing to move the train the play of the bumpers sideways and slightly up and down crushed the bones of the hand and arm and extended the injury above the wrist and broke the bones of the arm above the wrist. Plaintiff was unable to extricate his hand and arm until the train stopped. In spite of the injuries to his hand received by the train striking the car, it would not have been necessary to amputate his hand and arm but for the additional injury produced by the engineer continuing to move the train after plaintiff's hand was caught and after the coupling had been made. At the time the injury occurred plaintiff had been employed by defendant only three months, and was comparatively ignorant of the running of railroad trains. Up to the time of his employment by said engineer, plaintiff had had no experience in such matters, and the engineer knew the same. The engineer had never before since plaintiff was employed gone upon a side-track and kicked the cars thereon; and plaintiff had no notice or knowledge up to the time of and not until after the injury that it was the engineer's intention to kick said cars on the side-track.

The demurrer was on the following grounds: No cause of action is set forth. The declaration does not show that plaintiff made any effort to avoid the injury when he discovered that the train was approaching him at a high rate of speed; it does not show his position at that time, and does not show that he could not have avoided the injury by the exercise of ordinary care. The manner in which plaintiff was injured is not set forth with sufficient detail to put defendant upon notice of the facts upon which plaintiff insists. The declaration does not show the position of plaintiff and his hand to the train and car at the time the injury was received, or how the injury was inflicted, or between what parts of the train and car the plaintiff's hand was mashed, or in what way he was engaged at the time of the injury.

*H. H. Perry* and *W. T. Day*, for plaintiff.
*Clay & Blair* and *John Henley*, for defendant.

ATKINSON, Justice.

1. The liability of the defendant in the present case is referable to the general law bearing upon the relation of master and servant; for, while the defendant was engaged in running and operating a railway train, it was a mere private institution, not operated under and by virtue of any franchise granted by the State, and therefore does not fall within the provisions of our code imposing liability upon railroad companies in favor of an employee injured, when without fault himself, in consequence of the negligence of a fellow-servant. The sole question for determination is whether the person whose alleged negligence caused the injury was, in a legal sense, a fellow-servant with the person injured, and engaged as such in and about the common employment of the master.

Corporations act only by and through their agents; and while in the loose general sense all agents and servants of a corporation, without reference to rank or dignity, are co-employees, they are not fellow-servants in the sense which relieves the corporation from liability for the negligent act of one resulting in injury to another, where the person whose negligence caused the injury occupies the position of *quasi* master as to the person injured. *Atlanta Cotton Factory* v. *Speer*, 69 *Ga.* 137. Such a doctrine would result in defeating, in every instance, a right of recovery in favor of an employee of a corporation, injured in consequence of the negligence of another employee. Where the master delegates to one of his employees such authority as subjects the will and discretion of all other employees, engaged in and about the particular business, to the direction and control of the person to whom that authority is delegated, such person may be well said to be a vice-principal, and to stand in the relation of the master himself.

The negligence of such person may properly be imputed to the master as his act, and particularly is this true with respect to the employees of corporations; for if the master be not present in the person to whom it has delegated this authority, it is not and can never be present at all. It appears in the present case, according to the allegations in the declaration, that the engineer through whose negligence the injuries were alleged to have been sustained had, by direction of the common master, the corporation, sole charge and entire control and management of the train, and of the plaintiff in his capacity as brakeman and coupler thereon. It was alleged that the plaintiff was a subordinate employee under the direction and control of the engineer, and that it was his duty to obey the orders of the engineer. The declaration alleges that he was employed by the engineer. These allegations being admitted by the demurrer to be true, the engineer, while a coemployee, was not in a legal sense a fellow-servant with the plaintiff. The master had deputed to the engineer authority over those who were subordinate to him, and the negligence of the person exercising such authority was the negligence of the master itself. (See Chicago, Milwaukee & St. Paul Railway Company *v.* Ross, 112 U. S. 377.)

2. The declaration, in all other respects, was sufficient, and the relation existing between the person injured, and the one through whose negligence the injuries were alleged to have resulted, not having been of such a character as to defeat a recovery upon the ground that they were fellow-servants, the demurrer to the declaration should have been overruled.      *Judgment reversed.*