### 29677. HARDWARE MUTUAL CASUALTY COMPANY et al. v. SPRAYBERRY.

DECIDED MARCH 6, 1943.  REHEARING DENIED MARCH 26, 1943.

*James B. Hamilton Jr., W. E. Buntin,* for plaintiff in error.
*Lanham & Parker,* contra.

SUTTON, J.  C. B. Sprayberry filed an application for compensation with the Industrial Board against McBrayer Brothers Furniture Company, employer, and Hardware Mutual Casualty Company, insurance carrier.  The director before whom the hearing was had rendered an award of compensation in favor of the claimant.  On appeal this award was affirmed by the superior court, and the exception is to that judgment.

The plaintiffs in error contend that the claimant was not entitled to recover, for the reasons that (1) the injury did not arise out of and in the course of his employment; (2) the evidence was not sufficient to meet the requirements of the Code, § 114-412, as to what must be shown to support a claim for compensation for hernia resulting from injury by accident; that section providing that "In all claims for compensation for hernia resulting from injury by accident arising out of and in the course of the employee's

employment it must be definitely proved to the satisfaction of the Department of Industrial Relations [now the Industrial Board]: first, that there was an injury resulting in hernia; second, that the hernia appeared suddenly; third, that it was accompanied by pain; fourth, that the hernia immediately followed an accident; fifth, that the hernia did not exist prior to the accident for which compensation is claimed," etc.; and (3) that notice of the accident was not given to the employer within the time prescribed by the Code, § 114-303, and was not excusable under any of the saving provisions of the section, it being provided that "Every injured employee or his representative shall, immediately on the occurrence of any accident, or as soon thereafter as practicable, give or cause to be given to the employer, his agent, representative, or foreman, or the immediate superior of the injured employee, a notice of the accident. This notice shall be given by the employee either in person or by his representative, and until such notice is given the employee shall not be entitled to any physician's fees nor to any compensation which may have accrued under the terms of this law prior to the giving of such notice. In the event a notice has not been given within 30 days after the accident, in person either by the employee or his representative, to the employer, his agent, representative, or foreman, or to the immediate superior of the injured employee, a written notice must be given. This written notice will not be required where an injured employee or his representative has given notice in person to the employer, his agent, representative, or foreman, or to the immediate superior of the injured employee. No compensation will be payable unless such notice, either oral or written, is given within 30 days after the occurrence of an accident or within 30 days after death resulting from an accident, unless it can be shown that the employee had been prevented from doing so by reason of physical or mental incapacity, or by fraud or deceit, or that the employer, his agent, representative, or foreman, or the immediate superior of the injured employee, had knowledge of the accident, or unless a reasonable excuse is made to the satisfaction of the Department of Industrial Relations [Industrial Board] for not giving such notice, and it is reasonably proved to the satisfaction of the Department that the employer had not been prejudiced thereby."

The evidence was substantially as follows: The claimant was

employed by the furniture company, and earned approximately $35 per week, his duties being to make sales and collections on a commission basis. It was testified by him, without contradiction: "The salesmen were required to help about the store, and things of that sort if it was necessary. It was at that time. I was doing the work of the company at that time" (when he was injured). On certain days merchandise sold by the salesmen was sent out in the company's trucks. On October 25, 1941, while helping a negro laborer pick up a stove to place it upon a "pair of trucks" to send it down an elevator, preparatory to delivery to one of the claimant's customers, he felt a pain in his right side in the region of his groin. The pain was so severe that he abandoned his work of filling orders, went downstairs to the shipping-room and sat on a stool for about thirty minutes, becoming nauseated and very uncomfortable, and on going to the rest-room and making an examination of his side he found a bulging, about the size of a golf ball, near his groin on the right side. This was about an hour after he lifted the stove. He had never had a hernia before. He did not report the injury to his employer, but about a week or ten days thereafter he mentioned the occurrence to one of the company's truck-drivers who, having had a similar experience, advised the claimant to procure and wear a truss, which he did. In explanation of his failure to report the injury to his employer, he testified that it happened at the busy season of the year, and, being on a commission basis, he wanted to get that part of the year's business, and was afraid that if he reported the injury he would be "laid off;" and that he did not know that he was required by law to report it within thirty days. He continued to work until December 3, 1941, at which time he consulted a doctor who told him that he had a hernia and recommended hospitalization for a radical operation. On the same day he reported to his employer the fact of his injury. The operation was immediately performed. The claimant was incapacitated for a period of six weeks, and then was able to return to his work with no disability.

J. B. Oglesby testified, that he was comptroller for the furniture company, and did not know anything about the claimant's hernia until December 3, 1941; that the reason the claimant gave him for not reporting the injury at the time of the accident was that he was fearful that he might be asked to quit work, and felt that he

could not afford to say anything about it; that nothing had interfered with the defense in the case; that so far as he knew there had not been anything changed by his failure to report; and that if desired the negro with whom the claimant was working at the time of his injury could be located. Dr. John L. Girrard, who operated on the claimant, testified that he had an inguinal hernia, which protrudes immediately after a strain.

"In order for an injury to be compensable under the terms of the workmen's compensation act, it must have been occasioned 'by accident arising out of and in the course of the employment.' Code, § 114-102. An accident arises in the course of the employment, within the meaning of the act, 'when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. . . An accident arises "out of" the employment when it arises because of it, as when the employment is a contributing, proximate cause. This and the conditions stated above must concur before the act can apply.' *New Amsterdam Casualty Co.* v. *Sumrell*, 30 *Ga. App.* 682 (2, *a*) (118 S. E. 786) ; *Keen* v. *New Amsterdam Casualty Co.*, 34 *Ga. App.* 257 (129 S. E. 174) ; *Bibb Mfg. Co.* v. *Alford*, 51 *Ga. App.* 237 (179 S. E. 912)." *Employers Liability Assurance Corporation* v. *Woodward*, 53 *Ga. App.* 778 (187 S. E. 142). See *Liberty Mutual Insurance Co.* v. *Mangham*, 56 *Ga. App.* 498 (193 S. E. 87) ; *Travelers Insurance Co.* v. *Clark*, 58 *Ga. App.* 115, 120 (197 S. E. 650). Although in derogation of the common law, the workmen's compensation act, being highly remedial in its nature, must, under repeated decisions, be liberally construed to effect its beneficent purposes. Upon the application of these principles of law to the evidence in the present case, we think that the director was authorized to find as a fact that at the time of his injury the claimant was engaged in helping a laborer lift a stove in preparation of sending it out on an order which had been obtained by him as salesman; that what he was doing was incidental to his regular employment; and that the injury arose out of and in the course of his employment.

The director was also authorized to find from the evidence, in compliance with the Code, § 114-412, that the injury resulted in a hernia, that the hernia appeared suddenly, that it was accom-

panied by pain, immediately followed an accident to the claimant, and that the hernia did not exist previously to the injury produced by strain. To constitute injury by accident it is not necessary, as plaintiffs in error argue, that there should be an extraordinary occurrence in or about the performance of the work engaged in, such as falling, slipping, or being struck. In other words, the claimant is not barred from recovery merely because he was lifting a stove in the usual and ordinary manner. The word "accident" in the workmen's compensation act has not the same meaning as "accidental means," often found in policies which insure against bodily injury effected solely and exclusively of all other causes from violent and external injury by accidental means. "Injury by accident" as used in the Code has the same meaning as the expression is used in the Code, § 114-102, which provides: " 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except where it results naturally and unavoidably from the accident, nor shall 'injury' and 'personal injury' include injury caused by the wilful act of a third person directed against an employee for reasons personal to such employee." *American Mutual Liability Insurance Co.* v. *McCarty,* 45 *Ga. App.* 483 (165 S. E. 291). See *Brown* v. *Lumbermen's Mutual Casualty Co.,* 49 *Ga. App.* 99 (174 S. E. 359). "The word 'accident,' as used in the act, includes every injury except diseases not naturally growing out of injuries arising out of and in the course of employment, injuries caused by the wilful act of a third person directed against such employee for reasons personal to him, and wilful misconduct on the part of the employee." *Reid* v. *Lummus Cotton-Gin Co.,* 58 *Ga. App.* 184, 185 (2) (197 S. E. 904). "Under the workmen's compensation law, an employee is entitled to compensation for injuries from accidents arising out of and in the course of the employment; that is, for such occurrences as might have been reasonably contemplated by the employer as a risk naturally incident to the nature of the employment, or such as, after the event, might be seen to have had its origin in a risk connected with the business of the employment, and to have arisen out of and flowed from that source as a natural consequence." *United States Fidelity & Guaranty Co.* v. *Green,* 38 *Ga. App.* 50 (142 S. E. 464) ; *Liberty Mutual Insurance Co.* v. *Neal,* 55 *Ga. App.* 790, 801 (191 S. E. 393). See, as

to this feature, *Hardware Mutual Casualty Co.* v. *Sprayberry*, 195 *Ga.* 393 (24 S. E. 2d, 315), in answer to certified question from this court.

The contention of the plaintiffs in error that the hernia could not be said to have appeared "suddenly" and to have "immediately followed" the accident can not be upheld. Bearing in mind that the workmen's compensation act is to be liberally construed to effect its beneficent purposes, it would be unreasonable to hold that the words "suddenly" and "immediately" must be taken as equivalent to "instantaneously." A "hernia" is defined by Webster as "A protrusion consisting of an organ or part projecting through some natural or accidental opening in the walls of its cavity. . . Hernia of the abdominal viscera is most common." We are of the opinion that it was the intention of the legislature to prescribe, as between a cause and its effect, an interval of time which, though short, would be sufficient in duration for the effect to follow the cause in the usual course of nature. See *Central Surety & Insurance Cor.* v. *Industrial Com.*, 84 Colo. 481 (271 Pac. 617). As was said in *Rudd* v. *Fairforest Finishing Co.*, 189 S. C. 188 (200 S. E. 727), in construing similar provisions of their workmen's compensation act: "In our opinion, the legislative purpose evident in our act is to restrict compensation for hernia to those cases where there is a relative and reasonably close coincidence between the accidental injury and the hernia, and where it is clear that no other agency intervened, as to time, place, or action, to cause the injury. The words 'suddenly' and 'immediately' are elastic terms, admitting of much variety of definition, as held by the commission. And, as used in the act, these words should not be construed as the equivalent of the word 'instantaneous.' Like similar absolute expressions, they are used here with less strictness than the literal meaning requires. For to give them their literal signification in all cases, regardless of the attendant situations and circumstances, would often defeat meritorious claims upon purely technical grounds, and thus frustrate the purpose of the act." See also *Layton* v. *Hammond-Brown-Jennings Co.*, 190 S. C. 425 (3 S. E. 2d, 492). It certainly could be said in the present case that the hernia "appeared" and "followed the injury" within not more than an hour; and consequently we think the director was authorized to find that, within the contemplation of the workmen's compensation act,

it appeared "suddenly" and "immediately followed" the accident, no such interval of time elapsing between the lifting of the stove and the appearance of the hernia as would suggest that the hernia was produced by a blow or such cause as would place it in the category of a disease.

Nor is there any merit in the contention of the plaintiffs in error that the director was not authorized to find that the claimant, not having given the notice of accident specified in the Code, § 114-303, did not show a reasonable excuse for his failure to do so, and that his employer was not prejudiced by lack of notice. It is provided, as one of the saving provisions of the Code section, that where notice of the accident is not given to the employer within thirty days, compensation may be paid (where, of course, other requisites are met) if "a reasonable excuse is made to the satisfaction of the Department of Industrial Relations" (the Industrial Board) *and* "it is reasonably proved to the satisfaction of the department that the employer had not been prejudiced thereby." Inasmuch as it is intended by the act that all questions of fact are for the determination of the Industrial Board, and its findings are conclusive upon the courts where, as in the case of a jury, there is sufficient evidence to support them, we think that it was intended by the legislature that the reasonableness of the excuse offered for failure to give the specified notice of the accident is for the determination of the Industrial Board. It can not be said as a matter of law that the excuse offered by the claimant was not a reasonable one, viz., that the accident happened at the busy season of the year, and, being on a commission basis, he wanted to get that part of the year's business, and was afraid that if he reported the injury his services would be discontinued temporarily. The comptroller of the company showed conclusively by his testimony that the employer was not prejudiced by lack of notice. The plaintiffs in error argue that in testifying as to lack of prejudice he used the words "my defense," and therefore that it was not shown that the *employer* was not prejudiced. The witness was an executive of the company, and evidently familiar with its business and what measures were necessary or available in its defense to the present claim for compensation; and the director was authorized to construe his testimony as having reference to the company's defense, rather than to his own personal defense which was in no wise involved. His testi-

mony was elicited by certain questions from the claimant's counsel as to whether or not anything had interfered with the *company's* defense. In fact the witness did not use the expression "my defense." The plaintiffs in error quote this expression from what they set forth in their brief as a narrative form of the witness's testimony, whereas the record shows that the questions and answer were: "Q. Was the company prejudiced any way by his failing to make a report? [Objected to.] Q. State if there was anything that has interfered with your defense in this case? A. No, sir." Thus it is seen that the witness was testifying, not as to *his* defense, but as to the *company's* defense. The superior court did not err in affirming the award.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*