38982. FOWLER v. SOUTHERN WIRE & IRON, INC., *et al.*

Decided September 6, 1961—Rehearing denied
September 22, 1961.

*Poole, Pearce & Hall, Edwin Pearce, John S. Patton, Martin H. Rubin,* for plaintiff in error.

*Smith, Field, Ringel, Martin & Carr, Palmer H. Ansley, John L. Westmoreland, Jr.,* contra.

HALL, Judge. The defendant contends that, since it has filed an affirmative defense that the plaintiff's injury was covered by the Workmen's Compensation Act and on the motion for summary judgment the above quoted stipulation was before the trial court, this court's former adjudication in this case requires an affirmance of the judgment of the trial court. We must reject this contention. On the former adjudication this court decided as to the corporate defendant, among other things, that the plaintiff's petition was not, because of its failure to show that the employer and employee had adopted the Workmen's Compensation Act, subject to the demurrer on the ground that it failed to set forth a cause of action. The decision left open the question whether, as a matter of law, when the defendant affirmatively shows that the employer and the employee have adopted the act, the injury for which the employee sues is one covered by the act as defined by *Code* § 114-102. This is the issue now before the court.

Was the injury to the employee, resulting from the facts set out above, an injury by accident as contemplated by the Workmen's Compensation Act? The law, *Code* § 114-102, as amended (Ga. L. 1946, pp. 103, 104), defined "injury": " 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment and shall not, except as hereinafter provided, include a disease in any form except

where it results naturally and unavoidably from the accident, nor shall 'injury' and 'personal injury' include injury caused by the wilful act of a third person directed against an employee for reasons personal to such employee." "Accident" as used in the act has been judicially described as including every injury except those expressly excluded; and it is held that for those accidents not excluded the act precludes action at common law or otherwise. *Reid v. Lummus Cotton Gin Co.*, 58 Ga. App. 184 (197 SE 904) (where injury allegedly arose out of employer's negligence); *Hardware Mut. Cas. Co. v. Sprayberry*, 69 Ga. App. 196, 201 (25 SE2d 74); s.c., 195 Ga. 393 (24 SE2d 315) (where employee suffered a hernia); *Echols v. Chattooga Mercantile Co.*, 74 Ga. App. 18 (38 SE2d 675). However, we have found no decision in which this description of "accident" appears that involves an intentional tort by an employer upon an employee.

We are of the opinion that in determining the definition of the word "accident" it is necessary to return to the historical distinction that existed between the actions of trespass and case. At common law a trespass was a wrongful act done with force and immediately injurious to the person of another. Keigwin, Cases on Common Law Pleading, p. 100. It was "the only remedy for a menace to the plaintiff, attended with consequent damages . . . ; and for an illegal assault, battery, and wounding . . ." 1 Chitty on Pleading, p. 167. If the injury was not forcible, or not direct and immediate on the act done, but only consequential, then the remedy was by action on the case. 1 Chitty on Pleading, p. 124. While trespass to the person was originally available even when bodily injury was not intended, if it was immediate and direct, "Modern law has almost completely abandoned the artificial classification of injuries as direct and indirect, and looks instead to the intent of the wrongdoer [trespass] or to his negligence [case]." Prosser on Torts, p. 38; Harper, Torts, Vol. 1, p. 213, § 3.1; Vol. 2, p. 747, § 122. See also 6 C.J.S. 802, § 9; 4 Am. Jur. 137-143, §§ 18-25.

The classification of torts according to intent has been generally recognized in Georgia. The Civil Code of 1910, § 4413 (*Code* of 1933, § 105-108) provided that "Every person shall be

liable for torts committed by . . . his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." "The word 'voluntary' . . . will cover any or all motives or purposes of the wrongdoer, acting in the scope of his employment, which are not covered by 'acts of negligence.' " *Frazier v. Southern Ry. Co.,* 200 Ga. 590, 593 (37 SE2d 774). "In many, probably in a large majority, of the instances in which masters have been held liable for the torts of their servants, the liability has been made to rest upon the negligence of the servant and the negligence of the master in employing a careless servant or upon the master's negligent failure of duty. In such cases the master is held to be liable in an action on the case. But it is also held that the master may, in certain cases where liable for the tort of his servant, be held answerable in an action of trespass vi et armis. The master is liable in trespass for the wilful torts of his servant, committed in the course of the servant's employment and in and about the master's business. . ." *Central of Ga. Ry. Co. v. Brown,* 113 Ga. 414, 417 (38 SE 989, 84 ASR 250).

It was the law in Georgia prior to the enactment of the Workmen's Compensation Act to govern "industrial accidents" (Ga. L. 1920, p. 167), that ". . . the master shall not be liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business." Civil Code of 1910, § 3129 (*Code* of 1933, § 66-304). However, agents or employees in authority over other employees were not fellow servants in contemplation of this provision. *Taylor v. Georgia Marble Co.,* 99 Ga. 512, 517 (27 SE 768, 59 ASR 238).

The Workmen's Compensation Act, of course, modified the "fellow servant rule" embodied in the above statute and court decisions, as well as other aspects of the law of master and servant respecting injuries to employees. We are of the opinion, however, that the act did not change an employer's liability for injuries to an employee caused by intentional misconduct of its agent. While the Workmen's Compensation Act is held to include within the contemplation of the term "accident" unintentional torts by an employer (*Reid v. Lummus Cotton Gin Co.,* supra), we feel that intentional torts by an employer to an em-

ployee are outside the purposes of the act. The intention to inflict an injury, which is an essential element of an intentional personal tort (trespass), is entirely lacking where injury is the result of an accident, or a negligent act (case). 4 Am. Jur. 126, § 3.

In other jurisdictions it has been held, against the contention that workmen's compensation is the employee's only remedy, that an employee may recover at common law for injuries caused by an employer's intentional attacks. Representative of cases so holding are Heskett v. Fisher Laundry & Cleaners, 217 Ark. 350 (230 SW2d 28); Stewart v. McClellan's Stores Co., 194 S. C. 50 (9 SE2d 35); Lavin v. Goldberg Bldg. Material Corp., 274 App. Div. 690 (87 NYS2d 90); Boek v. Wong Hing, 180 Minn. 470 (231 NW 233, 72 ALR 108); and Conway v. Globin, 105 Cal. App. 2d 495 (233 P2d 612).

In De Coigne v. Ludlum Steel Co., 297 NYS 251, the defendant employer's foreman directed the cafeteria manager to serve the employee poisoned pie. This case established the rule in New York that an intentional injury by an employer, either directly or through an agent or servant, is not an accident under the Workmen's Compensation Act and permits a common-law remedy. It has been followed in several later cases involving attacks on employees by superior employees. One court has even gone so far as to suggest that the legislature may be without power to deny the citizen the right to resort to the courts for the redress of any intentional injury to his person by another. Richardson v. The Fair, Inc., 124 SW2d 885 (Tex. Civ. App.). In the case just cited the employee alleged that the employer hired an assistant manager for the special purpose of assaulting him and that there was a conspiracy between the employer's manager and the assistant manager to commit the assault. The court went on to say that the Workmen's Compensation Act does not affect the citizen's right of redress for intentional injury to his person by another, such as malicious assault, mayhem, torture, or murder. In that case it was said: "The injuries, or wrongs, with which it deals are accidental injuries or wrongs . . . it now constitutes a maxim of modern civilization—that an employer cannot correct and punish with whips the mistakes of his

employees committed in the course of their employment, and protect himself against civil liability for the results of his assaults under the coverage of our Workmen's Compensation Act."

Did our legislature, having in mind the beneficent purposes of the Workmen's Compensation Act, intend that an intentional injury by an employer to an employee be covered? What were those beneficent purposes? "The intent of the act was to secure compensation to workmen for the perils of their employment, the risk of which it had been previously thought they assumed as a part of the contract of employment, for which they were rightly or wrongly supposed to be compensated by their wages. . . The Workmen's Compensation Act forms a legislative response to a public demand that a system be afforded whereby employers and employees might escape from personal injury litigation, and every employee not guilty of wilful misconduct might receive at once a reasonable recompense for injuries accidentally received in his employment under fixed rules and without friction. . . The great object or theory of the workmen's compensation laws is to shift the burden of economic loss, entailed by personal injuries to workmen necessarily accompanying modern industrial operations, from the employee to the industry, in order that it may ultimately be borne by the consumer as a part of the necessary cost of production, rather than by the one particular establishment in which the employee was working while injured. . . Its fundamental purpose is that the industry or employment which requires human agency for its operation should look to the care and upkeep of that agency, and afford speedy and inexpensive relief to injured employees without resort to litigation in the law courts. . . So the Workmen's Compensation Act is to be construed and interpreted by the courts in the light of, or so as to promote, its purposes and objects, with reference to its subjects, and in the light of, or so as to remedy, the ills or evils that the act was intended to remove. Such act is remedial and has a beneficent purpose, and it should be accorded a liberal and broad construction or interpretation in order to promote or effecuate its purposes. . . The act should be given interpretation for the benefit of and in favor of the employees and their dependents . . . a forced construction

of the wording thereof to accomplish this will not be indulged in." *Continental Casualty Co. v. Haynie*, 51 Ga. App. 650, 651 (181 SE 126). ". . . The act severely limits the maximum amount of recovery in a strong case of serious injury, and is in this respect beneficial to the employer. . . This law was not enacted for the purpose of requiring compensation from the employer because of the remotest responsibility of the employer for the injury. Negligence or blame on the part of the employer is not an essential requisite to recovery." *Lumbermen's Mut. Cas. Co. v. Griggs*, 190 Ga. 277, 288 (9 SE2d 84). Accord, 1 Schneider, Workmen's Compensation 3, § 3, 11, § 4. "It is also said to be the purpose of most of the acts to provide . . . for employers a liability which is limited and determinate." 58 Am. Jur. 576, § 2.

These authorities indicate that in various ways the workmen's compensation laws were intended to benefit workmen, employers separately, and employers collectively. We could not say the legislature intended a benefit to any employer with respect to its intentional, unlawful acts. Employers collectively would not be benefited by including such injuries under workmen's compensation. Employees will not benefit from including them under workmen's compensation and precluding a common-law action, if we assume that in most cases the employer would have assets sufficient to satisfy a judgment. The courts of other States indicate in the decisions cited, supra, that the exclusion of such torts from workmen's compensation benefits the employee. "It would be abhorrent to our sense of justice to hold that an employer may assault his employee and then compel the injured workman to accept the meagre allowance provided by the Workmen's Compensation Law. Under such circumstances the one assaulted may avail himself of a common law action against his assailant where full monetary satisfaction may be obtained." Lavin v. Goldberg Building Materials Corp., supra. In Horovitz on Workmen's Compensation, p. 336 it is said: "Where the employer is guilty of a felonious or wilful assault on an employee he cannot relegate him to the compensation act for recovery. It would be against sound reason to allow the employer deliberately to batter his helper, and then compel the worker to accept moderate workmen's compensation benefits. . ."

*Hardware Mut. Cas. Co. v. Sprayberry*, 69 Ga. App. 196, supra, states at page 201: "Under the workmen's compensation law, an employee is entitled to compensation for injuries from accidents arising out of and in the course of the employment; that is, for such occurrences as might have been reasonably contemplated by the employer as a risk naturally incident to the nature of the employment, or such as, after the event, might be seen to have had its origin in a risk connected with the business of the employment, and to have arisen out of and flowed from that source as a natural consequence."

Injuries not within the reasonable contemplation of the employment are not covered by the act. 101 C.J.S. 375, § 923.

A malicious unlawful act or intentional injury by the employer is not "reasonably contemplated" as a risk of the employment or the business.

The employer in the present case relies on *Echols v. Chattooga Mercantile Co.*, supra, and the earlier case of *McLaughlin v. Thompson, Boland & Lee, Inc.*, 72 Ga. App. 564 (34 SE2d 562), which the *Echols* case followed. In neither of these decisions does it appear that the employer's wrong against the employee was an intentional one. They were in effect actions on the case against employers based upon the employer's negligence in employing an unfit agent. These cases therefore do not establish a rule that an injury resulting from an employer's intentional tort—a trespass to the person of the employee—is an "accident" compensable only under workmen's compensation.

Since neither the *McLaughlin* and *Echols* decisions, nor the decisions cited in them as authorities, were based on intentional trespass by an employer upon an employee, they are distinguished from the present case.

For the reasons discussed above we hold that the employee's injury in this case was not caused by an accident within the intendment of the Georgia Workmen's Compensation Act.

*Judgment reversed. Felton, C. J., and Bell, J., concur.*

### ON MOTION FOR REHEARING.

HALL, Judge. In its motion for rehearing the defendant contends that the following language, from Headnote No. 1 of *Borochoff v. Fowler*, 98 Ga. App. 411 (105 SE2d 764), is the law

410

of the case: ". . . a petition which alleges a cause of action for an injury which would otherwise come within the exclusive remedy provided by the Workmen's Compensation Act but which does not affirmatively show that the employer has in its employ 10 or more employees is not subject to general demurrer on the ground that the plaintiff's exclusive remedy is under that act." Irrespective of the above language in the headnote, the opinion in the case shows beyond peradventure that the question decided by the present opinion was not adjudicated by this court on the former appearance of this case.

*Motion for rehearing denied. Felton, C. J., and Bell, J., concur.*