## THE AUGUSTA AND SUMMERVILLE RAILROAD COMPANY *vs.* DORSEY.

1. A suit against a railroad company for damages resulting from the careless and negligent running of its engine may be amended by setting out negligence in not discovering and remedying defects in the machinery of the engine, which by the use of ordinary care and diligence could have been discovered and remedied so as to prevent the accident.   Such amendment does not add a new cause of action.

2. That since the commencement of the pending suit the same plaintiff has brought suit for the same cause of action against another defendant, is not good ground for a plea in abatement nor for compelling the plaintiff to elect which action he will pursue.

3. The plaintiff being an expert engineer, and one question being whether he had been negligent at the time of the accident which was the basis of the suit, it was competent to prove by him what were his duties.

4. He could also testify to the fact that he had complied with all the instructions given him.

5, 6. A model or drawing may be made by a party to a suit to illustrate any article of machinery involved in the issue on trial, without notice to the opposite party.   Whether such model or drawing is properly proved to be such, is another question, and one not made here.

7. One question in a case being whether an engineer could be stopped under certain circumstances, an expert who testified on that subject could give his reasons for what he stated, and for that purpose, by way of illustration, state what he had known to be done under even more difficult circumstances.

8. The question being as to the duties and diligence of a particular employé, testimony that employés are generally required to work with dispatch is not admissible.

9. A conductor in authority over an engineer may testify as to the duties of the latter.

10. If specific instructions are given to an employé, they will control him ; but if none are given, he will be governed by the general duties of his position.   Where the testimony as to the existence of specific instructions was conflicting, the general duties of the position could be proved, as bearing on the case in the event the jury believed no specific instructions existed.

11. Where the opinion of an expert is admissible without giving any

The Augusta and Summerville Railroad Company *vs.* Dorsey.

reason, the opinion of one not an expert is admissible with his reasons therefor.

(*a.*) The existence of negligence being a vital issue in a case, the exclusion of competent testimony in respect thereto is a substantial error, and not a mere technical one.

12. In a suit by an employé of a railroad against his master for damages alleged to have resulted from the negligence of a co-employé, the latter is competent to prove that he was not at fault, under proper questions for that purpose.

13. Facts cannot be proved by a witness who states them from hearsay.

14. After amending his action, it is immaterial to prove why the plaintiff did not originally set out his cause of action in the shape put upon it by the amendment.

(*a.*) If this could be done, his statements to his counsel are not admissible for that purpose, he being himself a competent witness.

15. After all the testimony has been closed, to reopen it for further direct testimony is a matter resting in the sound discretion of the court, and unless abused, it will not be controlled.

16. The requests to charge in this case were substantially covered by the charge as given.

17. In a case involving vindictive damages this court would set aside a verdict if it had reason to suspect that such verdict was the result of bias in favor of one class of suitors or prejudice against another class.

18. Persuasive oratory is among the legitimate weapons of the lawyer, and that juries are affected by it is no ground for granting a new trial.

Amendments. Abatement. Actions. Evidence. Witness. Damages. Negligence. Practice in Superior Court. Charge of Court. Verdict. Attorney and Client. Before Judge SNEAD. Richmond Superior Court. October Term, 1880.

Reported in the decision.

FRANK H. MILLER; J. GANAHL, for plaintiff in error.

F. T. LOCKHART; W. K. MILLER; J. C. C. BLACK, for defendant.

CRAWFORD, Justice.

George R. Dorsey sued the Augusta & Summerville Rail-road Company, claiming $15,000.00 damages for injuries sustained, as he alleged, by reason of the unskillful, careless and negligent running of the engine and cars, in that by the said carelessness and negligence he was run over and his left leg so mashed and mangled that its amputation was necessary. That, as a consequence thereof, he suffered great bodily pain, and was put to large and heavy expenditures.

The defendant pleaded the general issue and a special plea, setting forth that plaintiff had been employed by the company on account of his experience as an engineer to act as flagman, and to take charge of the engine engaged in transferring passengers and freight through the city of Augusta, and to and from the several depots thereof. That at the time he was injured he had the sole and entire management of an engine rented by the company from the Georgia Railroad Company and manned by their employés. That when he was injured he was on the pilot of the engine, by his own voluntary act, and while the engine and cars were in motion he uncoupled the engine from the cars, when by reason of the separation he was unable to retain his position, and fell in front of the engine and was run over. That there was no pressing emergency requiring the act to be so performed, and that his action was one that no reasonable man would have done.

During the pendency of a former trial in the case, plaintiff filed an amendment to his declaration which the court allowed, and to the filing of which the defendant filed exceptions *pendente lite*.

This amendment was as follows:

"That besides the unskillful, careless and negligent running of said engine and cars, the said defendant is further guilty of negligence in this, that the drag-bar on the pilot of the engine then and there being used, upon which your

petitioner was standing, in the due and proper discharge of his duty, and without fault upon his part, was defective, which defect was not known to your petitioner at the time of the injury aforesaid, and not discoverable by him in the reasonable and ordinary exercise of diligence in the course of his duty, and that said defendant was careless and negligent in not discovering said defect, as it was its duty to do, or in failing to remedy the same."

The interlocutory exceptions filed thereto, and allowed, were as follows:

"Because the court allowed the plaintiff to amend his declaration setting out defective machinery as the cause of the accident, defendant's attorney objecting to the amendment as setting out a new and independent cause of action, and as not setting out the exact defect of the machinery which caused the injury, nor any knowledge of such defect."

When the declaration was amended, defendant amended its plea as follows:

"That the engine and engineer were employés of the Georgia Railroad and Banking Company, and hired by this defendant from said road to do this work for them, which plaintiff was employed to direct and control. That plaintiff knew this from the time of his employment, September 22d, to his injury, October 13th, 1877, daily and continuously used the same engine and the same employés, which were under his sole control.

"That if any of the machinery was defective and thereby caused plaintiff's injury, which defendants deny, it was sudden and without the previous knowledge of said employés of the Georgia Railroad and Banking Company, or of this defendant, and happened after previous use the same day by plaintiff without objection on his part."

Upon the last trial, defendant filed another plea as follows:

"That since the commencement of this suit and the amendment made to plaintiff's declaration, made May

6th, 1879, to which interlocutory exceptions were filed July 1st, 1879, by this defendant, the plaintiff instituted, September 9th, 1879, his action against the Georgia Railroad and Banking Company for damages, setting forth the same cause of action which is set forth in said amendment of May 6th, 1879, the declaration in which case, as of file in this court, is here to the court shown, which it prays may be inspected by this court, and if found to be the same cause of action, that plaintiff be required to elect which corporation he will hold responsible, and dismiss his cause of action as to the other for the same injury before this case shall proceed further."

This, on demurrer, was stricken, when defendant amended its plea, as follows:

"That by ordinance of the city council of Augusta, confirmed by the act of the legislature, they are authorized to use locomotive power for the movement of passenger, baggage and freight cars on their tracks. That having no engines of their own, they entered into a contract with the Georgia Railroad and Banking Company, which, along with other things, agreed to furnish to these defendants, for local work other than through transportation, an engine free of charge, in return for which these defendants were to do, on their own track, all the local hauling of said railroad free of charge.

"That pursuant to this contract, the engine set forth in plaintiff's declaration was furnished to this defendant for local work, from day to day, and was, by the plaintiff, as the sole agent of this defendant in that behalf, and employed for the purpose of personally controlling the movements thereof, accepted from day to day from the said Georgia Railroad and Banking Company, to-wit: from the date of his employment, September 22d, 1877, until his injury, October 13th, 1877. That on the day of the injury the plaintiff failed, as the agent of this defendant, to inspect the condition of the engine, but received and took the control and direction of the same, and that it

was when thus under his direction and entire control that he, while riding on the pilot thereof, of his own free volition, undertook to uncouple, when no pressing emergency existed, the engine from the car in front of it, which it was pushing forward, the train being still in motion at the time of the accident.     That this act, defendant avers, was done at the personal risk of the complainant himself, and contrary to instructions.     That if any negligence was committed, the plaintiff contributed thereto, and that if anything was omitted which should have been done, it was by the plaintiff himself."

Upon the declaration and pleas as herein set forth, the parties went to trial, and, under the evidence and charge of the court, the jury returned a verdict for the plaintiff for $11,000.00.     The defendant moved for a new trial, upon the grounds set out in the record, which was overruled by the court on each and every ground therefor, and the defendant excepted.

1. The first ground was the allowing plaintiff to amend his declaration as herein set forth.     The plaintiff's suit was based on the unskillful, careless and negligent running of the engine and cars; and the amendment was likewise founded on the alleged carelessness and negligence of the defendant, in not discovering that the drag-bar on the pilot of the engine was defective, and which, by the exercise of ordinary care and diligence, it could have discovered.     The amendment was no new cause of action, and was properly allowed.

2. The second ground is because the court, on demurrer, struck the amended plea of the defendant, asking an abatement as to said defendant, and praying an election between the pending suit and the one against the Georgia Railroad Company.

Where there are two suits pending by the same plaintiff against the same defendant, upon the same cause of action, commenced at the same time, the defendant may require the plaintiff to elect which one he will prosecute.

But if not commenced simultaneously, then the defendant may plead the former in defence of the latter. Code, §2894. This case did not present the facts for the application of this principle.

3. Because the court allowed the plaintiff to testify as to what was the duty of the engineer. The plaintiff himself having been admitted by the defendant to be a competent engineer, and one of the very questions in the case being whether the engineer was in fault on the occasion of the injury, it was not illegal for the plaintiff to testify as to his duty, that it might be also shown whether or not he was faithfully discharging that duty. The testimony was properly admitted.

4. Because the court permitted the plaintiff to testify that he had complied with all the instructions given him.

One of the issues of fact in the case was, whether he had obeyed the instructions which had been given him; and, of course, being a witness, he should have been allowed to state how that was. It was competent for the defendant to put it in issue, and to introduce testimony to the contrary, and why not equally so for the plaintiff?

5, 6. Because the court admitted in evidence, over the objection of defendant's attorney, a wooden model of a pilot and drag-bar, claimed to be that of the " Southerner." which caused the injury, without showing that the same from which it was copied was the identical pilot, or that any notice of the making thereof was given to defendants. Because the court admitted in evidence, over the objection of defendant's attorney, as *ex parte* and without notice, the drawing made by E. W. Brown, of the pilot of other engines than that which caused the injury to plaintiff.

The objection to the admissibility of this model, as appears by the record, was, that it was *ex parte*, and that there was no notice given of the intention to take a model of the pilot and drag-bar, and not because it was not shown

to be a model of the "Southerner." A model may be taken by a party to a suit, to illustrate any article of machinery involved in the issue on trial, without notice to the opposite party.

7. Because the court permitted the witness, H. L. Gibson, over the objection of defendant's attorney, to detail an instance of his personal experience on the Macon and Augusta Railroad, when in charge of an engine drawing a train of seven cars after it.

The conduct of the engineer in charge at the time of the injury being under inquiry, and the question being whether he might or might not have stopped his engine in time to prevent the damage to the plaintiff, this witness was allowed to give his testimony on that subject, and by way of illustrating what could be done as to stopping an engine, stated as an engineer, what he knew could be done, by his having done it, not with an engine simply, but with an engine and train of cars. This certainly went to illustrate the issue not upon theory alone, but upon actual knowledge, and was therefore admissible.

8. Because the court permitted H. L. Gibson, a witness for plaintiff, and engineer on the Georgia Railroad, to testify over objection of defendant's attorney when asked, "Do you know whether all employés are required to do their work with dispatch"—and to answer, "that is the rule they generally work upon."

The rule upon which employés *generally* work, was not a matter involved in this investigation touching the special work of this employé, and was therefore inadmissible, as I think.

9. Because the court permitted the witness, J. H. Davis, to testify—he being a conductor—to the duties of an engineer as to looking forward.

This objection appears to be founded upon the fact that the witness was a conductor. We are unable to appreciate the ground of the objection. Certainly one who is in au-

thority over an engineer whose duty is to obey, would be competent to testify as to what those duties were.

10. Because the court permitted the witness, W. E. Touchstone, to testify as to what his duties and instructions were as a flagman previous to Dorsey's appointment, and particularly that it was no part of his duty to inspect the engine received from the Georgia Railroad.

One of the grounds upon which the plaintiff based his right to recover in this case was, that the machinery with which he was to do his work was defective. It was undoubtedly the duty of some of the agents or employés to look after this matter. The parties were at issue as to whether there were any *specific* instructions given to the plaintiff; if there were, then he was bound by them; if none, then the general duties appertaining to the position were all important. For if it were the duty of the plaintiff to inspect the machinery for the company as its agent or employé, and he failed to do it, then he was not without fault, and therefore would be entitled to no recovery.

If the theory of the plaintiff was true that he had no *special* instructions, and under the *general* duties of the place this inspection did not devolve upon him, then the testimony was important and in that view admissible. Otherwise it would not be.

11. Because the court, after Jesse Thompson, a witness for defendant, had stated the facts of the accident as witnessed by himself, refused on motion of defendant's counsel to permit the witness to swear to his opinion and belief whether or not what he saw plaintiff do was the act of a prudent man in taking ordinary care of himself, and to give his reasons for his opinion; the question before the jury for their consideration being whether or not plaintiff was blameless in uncoupling the flat-car from the engine while standing on the pilot and the train was in motion, the said Jesse Thompson being the only witness to the accident not connected with the running of the

train ; this testimony being offered after the testimony introduced by plaintiff, of persons claiming to be experts, who had expressed their opinion about riding on the pilot and uncoupling in that position, this testimony being specially claimed to be admissible, under section 3867 of the Code.

The law is that experts may give their opinions upon the matter under investigation, where such opinions are admissible, without giving any *reason* for their opinions; others than experts may swear to their opinions or belief, *giving their reasons* therefor.   The testimony of this witness was ruled out because he was not an expert.   Upon any question upon which an expert is allowed to give his opinion without a reason, one who is not an expert may give his with his reasons.   If, therefore, the testimony of those who claimed to be experts on the matter in controversy was admissible, then, as a necessary consequence, the testimony of this witness was.   The admission of one was the admission of both, the exclusion of one was the exclusion of the other.   Both or neither was the law.

But it is said that this was only a technical error, and not such a one as to justify the grant of a new trial, and in support of this view, the case of *Howell vs. Howell*, 59 *Ga.*, 145, is relied upon.   We recognize and reaffirm the rule there laid down, but in our judgment this is a very different case from that.   This was the only wholly disinterested witness to the accident ; the vital question being, was the plaintiff without fault in stepping off from the platform car, where he was perfectly safe, over upon the open bars of the pilot, and that too while the engine was in motion, and where the miscalculation of an inch in placing his foot on, instead of between, the bars of the pilot, was to be passed upon by the jury.   And after the plaintiff and certain of his witnesses had expressed their *opinions*, that it was perfectly safe to uncouple from the pilot, the train being in motion, it was certainly but even-handed justice to have allowed this witness to have given his

opinon with his reasons therefor that it was not. Standing originally on the pilot and uncoupling from there, and moving from the flat-car to the pilot to uncouple whilst in motion, seem to us very important elements entering into the question of whether or not this plaintiff was faultless in this affair.

We are unable to say how far the opinion of such a witness as this, who had had an observation of seven years as to the way in which this work had been done, would have affected the verdict of the jury. And if we were, it would be improper to state it. But most assuredly the defendant should have had the benefit of its effect and weight with the jury, whatever that might have been.

12. Because the court refused to permit the witness, J. W. Touchstone, to answer the question, " Were you at fault at all ?" In view of the fact that the plaintiff had put the blame or fault on this witness by his testimony, it was nothing but proper to have allowed him to rebut fully the whole testimony of the plaintiff, so that the jury could have passed upon the truth of the issue between them on this most material point. We do not mean to be understood to be ruling upon the form of the question, so much as upon the limitation put upon the testimony itself.

13 Because the witness Ellis, when sworn, was permitted to answer, that Mr. Davis, the president of the company, had a rule which disallowed the employés to come into his office with their coats off, as he had been told by Mr. Mosher. This testimony, so far as relates to what Mr. Mosher told the witness, was ruled out, which was correct. But the whole of it should have been ruled out, because founded entirely upon what Mosher said, and upon nothing said or done by Mr. Davis; and even if it had been, it was wholly irrelevant.

14. Because Lockhart, one of the attorneys for the plaintiff, was allowed to testify as to conversations with Dorsey as to why the defective machinery of the engine was not originally alleged as a cause of action. Mr. Dor-

sey being a competent witness, his sayings as to the machinery were inadmissible, and especially so after the amendment had been allowed, as his reasons for the omission were then immaterial.

15. Because the witness, Radcliff, was confined to rebuttal alone in his testimony, he having been offered after all the parol testimony had closed. After all the testimony has closed, to re-open the case again for other and further direct testimony, must always rest in the sound discretion of the judge, and unless abused will not be interfered with by this court.   14 *Ga.*, 242 ; 64 *Ib.*, 344 ; See also *Maddox vs. The State*, ruled at the present term.

16. The 16th, 17th, 18th, 19th grounds of the motion for a new trial were based upon requests to charge, which were refused, and charges given upon request, and for errors and omissions in the charge itself.   A close and critical examination of the charge as set out in full in the record, satisfies us that the judge understood thoroughly the law of the case, and gave it in a clear, concise, and satisfactory manner to the jury.   So that when this is done, we cannot see how a failure to repeat what may be good law, but has been substantially charged, should be any good ground of error.   As there are no two cases exactly alike in their facts, extracts from elementary books and judicial decisions, although good, sound law, need not be reiterated to the jury after having been once stated in substance in the general charge.   The experience of each member of this bench is, that they often tend to confuse and bewilder, rather than enlighten and instruct the jury. The principle of law covering each fact in the case is quite as much as need be given ; and when that has been done, elaboration often perils the principle itself, and had best be omitted.

17. The 20th, 21st, 22d are founded upon the verdict, in that it is against the evidence, the weight of evidence, was excessive and unsupported by the facts of the case. Whilst this court will never invade the province of the

jury in weighing testimony, yet it would not hesitate to set aside a verdict in a case involving vindictive damages, where there was reason to suspect that the same was the result of bias in favor of one class of suitors, or prejudice against another class.

18. The last ground of error complained of is an extract from the closing argument of Mr. Black to the jury, in which, with great eloquence and power, he described the agony, the suffering and the torture endured by the plaintiff; and for which, as well as for every sigh, every groan, and every pain that he had suffered, he should have compensation equivalent to his agony. These were to be put in one side of the scales, and in the other side money, money, until they "in even balance hung," and the jurors felt that he had been fully and adequately remunerated.

The complaint is, not that this appeal was illegal, but that its effect was electrical, and produced a verdict founded not upon law and fact, but upon sympathy and sorrow. We cannot recognize this as a good ground for a a new trial. Impassioned appeal, and persuasive eloquence are but the lawful weapons of forensic conflict, and undoubtedly have been employed from the time in Greece when Mars himself was tried for murder by a jury of twelve men and acquitted by an equality of votes, in the first trial mentioned in history by a jury of that number. 3d Modern Rep., preface, page 9. On the whole, therefore, we think that there should be a new trial in this case.

Judgment reversed.