46201. GENERAL FIRE & CASUALTY COMPANY
et al. v. BELLFLOWER et al.

ARGUED MAY 6, 1971—DECIDED MAY 21, 1971—
REHEARING DENIED JUNE 4, 1971—CERT. APPLIED FOR.

Gambrell, Russell, Killorin, Wade & Forbes, Edward W. Killorin, Lloyd Sutter, for appellants.

O. L. Crumbley, L. Z. Dozier, Robert F. Higgins, for appellees.

JORDAN, Presiding Judge. 1. It is settled law that the deputy director and the full board, as the fact finders, have the exclusive prerogative of weighing the evidence, including determinations of the credibility of witnesses, and that the courts on appeal are bound by the findings if supported by any evidence.

2. A felonious assault does not prevent the resulting injury from being treated as an accident under the workmen's compensation law if the wilful act is not directed against the employee for reasons personal to the employee. *Employers Ins. Co. of Alabama v. Wright,* 108 Ga. App. 380, 381 (133 SE2d 39); *Pinkerton Nat. Detective Agency v. Walker,* 30 Ga. App. 91 (117 SE 281); s. c., 157 Ga. 548 (122 SE 202, 35 ALR 557); *Keen v. New Amsterdam Cas.*

*Co.,* 34 Ga. App. 257 (129 SE 174); *Commercial Constr. Co. v. Caldwell,* 111 Ga. App. 1 (140 SE2d 298). As between the testimony of the deceased's companion and his assailant the deputy director and the full board chose the version of the deceased's companion, as they had a right to do as triors of fact, and under this version the evidence authorizes the conclusion of accidental death not by reason of a wilful act of a third person directed against an employee for reasons personal to the employee.

3. "The words 'in the course of the employment' relate to the time, place, and circumstances under which the accident takes place, and an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682, 688 (118 SE 786). In our opinion the status of a bus driver who is required to be away from home overnight is substantially analogous to that of a traveling salesman required to remain away from home. "A traveling salesman is taken away from his home or headquarters by his employment; and, because of the nature of his work, he usually cannot return home each night. He must of necessity eat and sleep in various places in order to further the business of his employer; and the employer recognizes these necessities and usually pays the expenses of his lodging and meals, as was done in this case. While lodging in a hotel or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, unless he steps aside from his employment for personal reasons. Such an employee is in continuous employment, day and night. This does not mean that he can not step aside from his employment for personal reasons, or reasons in no way connected with his employment, just as might an ordinary employee working on a schedule of hours at a fixed location. . . The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, his acts of ministration to himself should not—and we believe do not—take him outside the scope of his employment, so long as he performs

these acts in a normal and prudent manner." *Thornton v. Hartford Acc. &c. Co.*, 198 Ga. 786, 790 (32 SE2d 816). Also see *Railway Express Agency v. Shuttleworth*, 61 Ga. App. 644 (7 SE2d 195). The present case, like the *Thornton* case, is clearly distinguishable on its facts from *U. S. Fidel. &c. Co. v. Skinner*, 188 Ga. 823 (5 SE2d 9), where the employee had gone on an 18-mile trip to a seashore resort for the sole purpose of eating a seafood dinner and to see the ocean. Where as here the evidence discloses that the employee was a bus driver working on an irregular schedule requiring him to be away from home, who was "off duty" but "on call," who was occupying lodging furnished by the employer, who was returning on a direct route to his lodging after having visited a convenient place in the area to eat, and who received an allowance for out-of-town expenses in addition to lodging, it supports a determination that the employee was in the course of his employment when he received the injuries which caused his death.

4. But did Bellflower's death arise out of his employment? " 'It "arises out of" the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from the source as a rational consequence.' " *New Amsterdam Cas. Co. v. Sumrell*, 30 Ga. App. 682, 688, supra, quoting McNicol's Case, 215 Mass. 497 (102 NE 697, LRA 1916A 306). In *Railway Express Agency v. Shuttleworth*, 61

Ga. App. 644, supra, where the employee met his death by reason of a hotel fire, the court reasoned that "spending the night at the hotel was a necessary and normal incident of his employment" (p. 650) and summarized the protection in a headnote (1 b) by stating that the law covers "exposure to the *perils of the highway* and the *hazards of hotels* which occur in the normal, usual, and accustomed manner, and which are incident to such exposure." Would the result, for the claimant, have been the same if the fire had been the work of an arsonist? The "peculiar to the employment" test as essential was rejected in *Fidel. & Cas. Co. v. Barden,* 79 Ga. App. 260 (54 SE2d 443) where the employee, an innocent bystander, was killed by the accidental discharge of a weapon which a visitor was demonstrating to another employee, a matter explained by the evidence as wholly unrelated to the business or the duties of the employees. Later in a case involving an employee who was shot for unexplained reasons just as he entered a post office to pick up his employer's mail, the court held that the evidence must explain the incident so as to eliminate any reasons personal to the employee and show that the employee "was shot on account of his duties as an employee." *Francis v. Liberty Mut. Ins. Co.,* 95 Ga. App. 225, 229 (97 SE2d 553). In *Employers Ins. Co. of Ala. v. Wright,* 108 Ga. App. 380, supra, involving rape at gunpoint in a secluded part of the premises where the employee worked, the incident thus being explained so as to eliminate reasons personal to the employee, the court viewed the conditions of the employment, alone at a laundry pick-up station around midnight, as increasing the risk of attack and subjecting the employee to a danger peculiar to the employment, and therefore an assault arising out of her employment. In *Wood v. Aetna Cas. &c. Co.,* 116 Ga. App. 284, 291 (157 SE2d 60) the court, recognizing the *Wright* case as a holding that a public service occupation exposes an employee to a risk of physical danger, which, if the hazard becomes an actuality, may under the circumstances constitute a reasonable incident of the employment, observed that "a public service occupation does not dispense with the requirement that a causal connection be found."

We think the evidence in the present case places the incident in the same category as the incident in the *Wright* case, once the

theory of an assault for reasons personal to the employee is eliminated. Walking on a street at night returning from a meal, in an area particularly susceptible to crimes against the person, where he was placed on account of his employment, exposed him to the likelihood of a felonious assault in the same manner as the conditions of employment exposed the rape victim in the *Wright* case, although the causal connection in these two situations may not be so readily apparent as the exposure of a bank teller to the possibility of injury resulting from robbery by force while at work. Nevertheless, under all three situations there exists a basis for concluding the existence of some causal connection between the conditions of the employment and the injury. In our opinion the evidence supports the determination by the board that the death arose out of the employment.

*Judgment affirmed. Quillian and Evans, JJ., concur.*