## 47323.   McDONALD et al. v. STATE HIGHWAY DEPARTMENT.

Argued July 5, 1972—Decided September 27, 1972.

172

*Hatcher, Meyerson, Oxford & Irvin, Stanley P. Meyerson, Tom B. Benham,* for appellants.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Alfred L. Evans, Jr.,*

*Don A. Langham,, W. Hensell Harris, Jr., Assistant Attorneys General,* for appellee.

STOLZ, Judge. 1. "The words 'in the course of the employment' relate to the time, place, and circumstances under which the accident takes place, and an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties *or engaged in doing something incidental thereto.*" (Emphasis supplied.) *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682, 688 (118 SE 786). In the case of *General Fire & Cas. Co. v. Bellflower,* 123 Ga. App. 864, 867 (182 SE2d 678), this court held that "the status of a bus driver who is required to be away from home overnight is substantially analogous to that of a traveling salesman required to remain away from home." The claimant's decedent, who was required to be away from home five days out of each week, certainly had this same status.

"By the very nature of his work, a traveling salesman is not usually restricted to working on a schedule of hours. His employment is broader in scope than that of ordinary employees; his hours are more irregular, and usually longer, than those of general employees working in a fixed location; his conduct of his duties is of necessity left largely to his discretion; and his acts of ministration to himself, such as eating a meal, because of the nature of his work, are not usually limited to a certain period, or periods, of time daily. Consequently, we think, in a case involving an injury to a traveling salesman while going to or from, or while eating, a meal, such a strict interpretation of the phrase, 'arising out of and in the course of the employment,' as is sometimes made in cases involving employees injured during a regular noon hour, or similar periods, is too limited. In the latter class of cases the injuries are received during a definite period set apart as belonging exclusively to the employees, during which they may go where they wish and do what they please, subject to no orders from their employers and freed from all duty or responsibility with reference

to their employment; and their employers do not usually pay the expenses of their meals.

"A traveling salesman is taken away from his home or headquarters by his employment; and, because of the nature of his work, he usually can not return home each night. He must of necessity eat and sleep in various places in order to further the business of his employer; and the employer recognizes these necessities and usually pays the expenses of his lodging and meals, as was done in this case. *While lodging in a hotel* or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, unless he steps aside from his employment for personal reasons. *Such an employee is in continuous employment, day and night.* This does not mean that he can not step aside from his employment for personal reasons, or reasons in no way connected with his employment, just as might an ordinary employee working on a schedule of hours at a fixed location. He might rob a bank; he might attend a dance; or he might engage in other activities equally conceivable for his own pleasure and gratification, and ordinarily none of these acts would be beneficial or incidental to his employment and would constitute a stepping aside from the employment. The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, *his acts of ministration to himself should not—and we believe do not—take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner.* Such activities, the performance of which are necessary to his health *and comfort,* while in a sense personal to himself, are nevertheless incidents of his employment and acts of service therein within the meaning of the workmen's compensation act, although only remotely and indirectly conducive to the object of the employment." (Emphasis supplied.) *Thornton v. Hartford Acc. &c. Co.,* 198 Ga. 786, 789 (32 SE2d 816). The *Thornton* case quoted with approval, on page 788, the following lan-

guage in *Employers Liability Assur. Corp. v. Pruitt,* 63 Ga. App. 149, 151 (10 SE2d 275): "The scope of employment of a traveling man is wider than that of an ordinary employee. *New Amsterdam Casualty Co. v. Sumrell,* 30 Ga. App. 682, 691 (118 SE 786). 'It can not be said that the employment is broken by *mere intervals of leisure* such as those taken for a meal. If an accident happened at such a time, there would be no break in the employment . . . unless the workman is doing something *wholly foreign* to his employment. Acts of ministration by a servant to himself, such as *quenching his thirst,* relieving his hunger . . . are incidents to his employment and acts of service therein within the workmen's compensation acts though they are only indirectly conducive to the purpose of the employment. Consequently, no break in the employment is caused by the mere fact that the workman is ministering to his *personal comforts* or necessities . . . to procure *drink, refreshments, food.'* 1 Honnold's Workmen's Compensation, 379-384, § 111." (Emphasis supplied.)

Under a line of cases exemplified by the *Thornton* case, supra, McDonald was "in continuous employment, day and night" while lodging in the motel authorized and paid for by his employer, hence was "continuously performing an act incident to his employment," unless he stepped aside from his employment for "personal reasons." Under the *Pruitt* case, supra, cited approvingly by the *Thornton* case, supra, McDonald's mere interval of leisure—during which he ministered to his personal comforts by procuring drink, refreshments, food, and relaxation by card playing and conversation, all after his normal working hours and on the premises of the *motel* authorized and paid for by his employer for his and his subordinate fellow employees' use— caused no break in the employment. Although his activities were "only indirectly conducive to the purpose of the employment," nevertheless, they were not "wholly foreign to his employment." Furthermore, under the reasoning of the cases above cited, the employee is not even restricted to the confines of his lodging place if the activity is not pro-

scribed. In our view, the fact that McDonald consumed *alcoholic* beverages during his interval of leisure is irrelevant in the case. Certainly, they constitute "drink," "refreshments," and/or "food." Although the employer did not pay him an allowance for alcoholic beverages, this does not demand a finding that he was forbidden to purchase them with his own funds. The mere consumption of alcoholic beverages was not illegal and there was no finding that it was a causative factor in McDonald's fall, that his acts of ministration to himself were not performed "in a normal and prudent manner," or that his fall was in any way caused by his own misconduct. When the employer paid for the employee's accommodations and living expenses at the Ramada Inn, it did not just rent a bedroom for the employee, but the entire facilities—the lounge, swimming pool, lobby, etc.—and had constructive knowledge that the employee would make use of the entire facilities on the premises. To restrict an employee with this status to the confines of his room or place of transacting business in his lodging place and hold that he is not covered except when either actually, directly conducting his employer's business or engaged in some activity which is strictly a *necessity* of life, would unduly limit the intended beneficial purpose of this remedial social insurance, which is to be liberally construed. *Wilson v. Maryland Cas. Co.,* 71 Ga. App. 184, 188 (30 SE2d 420).

2. Did McDonald's death arise out of his employment? "[A]n employee whose work requires that he travel and spend nights away from home and at hotels or lodging places, is protected by the provisions of the workmen's compensation law from exposure to the . . . *hazards of hotels* which occur in the normal, usual, and accustomed manner, and which are incident to such exposure. An injury so incurred may be said to have a causal connection with the employment, and therefore to have arisen out of the employment." *Railway Express Agency v. Shuttleworth,* 61 Ga. App. 644 (1b) (7 SE2d 195), cited in *Thornton,* 198 Ga. 786, 788, supra, and *Bellflower,* 123 Ga. App. 864, 868, supra.

As we pointed out in *Bellflower,* supra, pp. 869, 870, the "peculiar to the employment" test has been rejected in favor of the test of whether there is some causal connection between the conditions of the employment and the injury. Insofar as McDonald's injury is concerned, there is a clear causal connection between the steps, which he had to traverse to get from one portion of the premises to another, and his fall thereon. Regarding his subsequent death, there was the additional hazard of the possibility of not receiving adequate and timely medical treatment in case of injury, which occurred in this case.

"[W]here it affirmatively appears that the award is based upon an erroneous legal theory, and that for this reason the board has not considered all of the evidence in the light of correct and applicable legal principles, the case should be remanded to the board for further findings." *Miller v. Travelers Ins. Co.,* 111 ·Ga. App. 245, 248 (141 SE2d 223). The finding of fact in the award, to the effect that the fall occurred while the decedent was returning from a personal venture unrelated to his employment, affirmatively shows that the award was based upon the erroneous legal theory that the traveling employee, in order to be covered, must be engaged in either the direct conduct of the employer's business or an activity necessary to sustain life, which is more restrictive than is required under the authorities cited hereinabove.

3. The judgment must be reversed with direction that the case be remanded to the board with instructions to determine whether or not the claimants have shown their right to recover upon the application of the correct legal theory and, if so, in what amount.

*Judgment reversed with direction. Bell, C. J., and Evans, J., concur.*