50786. GENERAL ACCIDENT FIRE & LIFE INSURANCE COMPANY et al. v. STURGIS.

MARSHALL, Judge.

While at work around 6:00 a.m. on April 11, 1971, the decedent employee became ill, complaining to a co-worker that his stomach was hurting. Within the next hour his illness worsened and around 7:30 a.m. he became comatose. He was taken to a hospital where he remained unconscious until his death a few days later. The record shows that on the morning in question he had been working in close proximity to toxic chemicals, though the degree of his exposure to same is not shown. The pathologist who performed the autopsy stated in his deposition that "the man was suffering from an extensive pneumonia particularly in his right lung, and in my opinion, this bacterial infection caused his death." He further stated: "The pneumonia was caused by an organism called Diplococcus pneumoniae, and this is the most common cause of lobular pneumonia. It occurs

usually — it may occur spontaneously or in this particular instance I judged it to have caused pneumonia in a lung that had been damaged by inhalation of these noxious vapors. I think that this is a not uncommon situation with inhalation of a noxious gas. Subsequently there's an exudation of fluid in the lung. The fluid in the lung provides a good nutrient media for bacteria to grow in, and in the space of a couple of days the bacteria then proliferated and, in my judgment, caused the lobular pneumonia that ultimately caused his death." Though the pathologist found no evidence that the decedent had inhaled the gas, he stated: "What happens with any sort of gas that's inhaled is the initial response of the lungs is an exudation of clear fluid into the lung spaces. As this fluid accumulates in the lung spaces, it allows bacteria to proliferate and this takes place over a matter of a few hours or a couple of days. In my judgment in this particular case the fluid exudate that was there initially was not there when I saw it. What I saw at the time of autopsy was a full blown pneumonia in the lungs."

The deputy director found in favor of the employer and insurer. The full board reversed stating "It is settled law that where an employee is found dead in a place where he might reasonably be expected to be in the performance of his duties, the natural presumption arises that his death arose out of and in the course of his employment. A majority of the full board is of the opinion that the same natural presumption arises when an employee is found in a dying condition from a sudden illness in a place where he might reasonably be expected to be in the performance of his duties, a fortiori if working where he could become suddenly ill from exposure to chemicals. A majority of the full board is of the further opinion that this natural presumption has not been overcome or explained away by the evidence. It necessarily follows that Sturgis died from an accident arising out of and in the course of his employment." The superior court affirmed the findings and award of the full board.

Appellant, insurer, contends that there is no evidence that the employee's death was caused by the inhalation of fumes while at work, and the burden of proving such facts rested on the appellee, decedent's

survivor. Furthermore, the burden was not met by the "natural presumption" found by the full board, in that no such presumption exists. *Held:*

The issue is whether or not the employee's death arose "out of . . . the employment," under Code § 114-402. There is no question that his death arose "in the course of the employment," because he was at work when he became ill. We have held that ". . . an accident 'arises out of employment' when it is apparent to the rational mind, upon consideration of all the circumstances, that there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682 (118 SE 786). *Hartford Accident &c. Co. v. Cox,* 101 Ga. App. 789, 792 (115 SE2d 452)." *Dept. of Labor v. Yates,* 131 Ga. App. 71, 72 (205 SE2d 36).

While, ordinarily, an initial determination of this factual issue would be affirmed under the "any evidence" rule, e.g., *Dept. of Labor v. Yates,* 131 Ga. App. 71, 73, supra, that rule does not lend itself to this case. As appellant's counsel points out in his motion for rehearing, the pathologist's opinion as to the cause of death (quoted above) is not based upon an established fact, to wit: that the employee inhaled noxious fumes. Instead, his opinion is based upon his own assumption of that fact from having read a note in the hospital record when the employee was admitted that he had worked at a plant where "formaldehide, nitrite and nitrate compounds [were] regularly in use." He stated that there could have been other causes of the pneumonia. Thus, the inference of the pathologist that gas vapors caused the development of pneumonia is not based on fact but on the inference that, because the employee worked around noxious chemicals, he inhaled them. The finder of fact "cannot assume the ultimate fact merely from other facts which are based upon an inference rather than upon proof . . . 'Ordinarily it is the rule of circumstantial proof that the facts from which the main fact is to be inferred must be proved by direct evidence. An inference resting only upon an inference is not permissible.' " *Miller v. Gerber Products Co.,* 207 Ga. 385, 388 (62 SE2d 174); Code § 38-123.

It is apparent that because of this rule, the board

refused to find from any of the evidence, and particularly from the pathologist's testimony, that the employee inhaled noxious fumes. We uphold that finding as sufficient. Having re-read the entire record, we find there is no evidence whatsoever that he, *in fact,* inhaled the noxious fumes. Indeed, the record is barren of any evidence, medical or otherwise, of what might have precipitated the development of pneumonia. A consulting neurologist's notes state, "I am at a loss to explain the etiology of the profound metabolic acidosis with which he presented . . ." The death certificate stated his death was due to "undetermined causes."

"The burden of proof in a workmen's compensation case is upon the claimant to show that the employee suffered an accidental injury which arose out of and in the course of his employment. *Harper v. National Traffic Guard Co.,* 73 Ga. App. 385 (2) (36 SE2d 842); *Hughes v. Hartford Acc. &c. Co.,* 76 Ga. App. 785, 789 (47 SE2d 143); *Wilcox v. Shepherd Lumber Corp.,* 80 Ga. App. 71, 73 (1) (55 SE2d 382)." *City of Pembroke v. Jones,* 109 Ga. App. 296 (136 SE2d 139). The employee is aided in his burden by the well-established presumption stated in the board's decision that when an employee is found dead in a place where he might reasonably have been expected to be in the performance of his duties, it is presumed that the death arose out of his employment. *Standard Accident Ins. Co. v. Kiker,* 45 Ga. App. 706 (5) (165 SE 850) and cases cited therein. There have been many cases reported in Georgia dealing with this presumption. Without attempting to accept some as precedent and to distinguish or reconcile others (compare, e.g., *Francis v. Liberty Mut. Ins. Co.,* 95 Ga. App. 225 (97 SE2d 553) with *Standard Acc. Ins. Co. v. Kiker,* 45 Ga. App. 706, supra (death by gunshot cases); and *Travelers Ins. Co. v. Davis,* 120 Ga. App. 625 (171 SE2d 909) with *Brown Transport Corp. v. Jenkins,* 129 Ga. App. 457 (199 SE2d 910) (heart attack cases), and *Smith v. Liberty Mut. Ins. Co.,* 111 Ga. App. 616, 619 (142 SE2d 459) ("the . . . presumption . . . arises only . . . where . . . death is unexplained") with *Hardware Mut. &c. Co. v. King,* 104 Ga. App. 252, 254 (121 SE2d 336) (the presumption arises only in those cases where "the cause of death is known")), we simply find the

presumption applicable to this case. The practical justification of the rule is that "when the death itself has removed the only possible witness who could prove causal connection, fairness to the dependents suggests some softening of the rule requiring claimant to provide affirmative proof of each requisite element of compensability." 1 Larson's Workmen's Compensation Law, § 10.32, pp. 3-87, 3-88. It is consistent with this justification and with logic to extend the presumption to this employee, who, though he did not actually die on the job, became ill and comatose on the job and who remained unconscious until he died three days later in the hospital.

The effect of applying the presumption to this case is to establish a prima facie case for the claimant that the death arose out of employment. The burden then shifted to the employer/carrier to produce evidence to rebut the presumption. *Travelers Ins. Co. v. Curry,* 76 Ga. App. 312 (45 SE2d 453); *Aetna Cas. & Surety Co. v. Fulmer,* 81 Ga. App. 97 (57 SE2d 865); 11 EGL § 140. There being no such evidence, we can only conclude, as did a majority of the board, that the death arose out of employment.

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED JUNE 16, 1975 — DECIDED SEPTEMBER 23, 1975 — REHEARING DENIED OCTOBER 22, 1975 —

*Fulcher, Hagler, Harper & Reed, William C. Reed,* for appellants.

*Sanders, Hester, Holley, Askin & Dye, Otis F. Askin, William J. Williams,* for appellee.