## 56153. BARGE et al. v. CITY OF COLLEGE PARK.

McMURRAY, Judge.

Appeal in this case was taken from the judgment of the Fulton Superior Court affirming the State Board of Workers' Compensation's (changed from the State Board of Workmen's Compensation by Ga. L. 1978, pp. 2220, 2221, effective July 1, 1978) denial of a claim filed by Mrs. Alice P. Barge, as the widow of Eugene Barge and on behalf of Phillip A. Barge, the minor child of the deceased.

The central issue presented to the administrative law judge and to the full board, which upon a de novo consideration of all the evidence adopted his findings, was whether the death of Eugene Barge occurred out of and in the course of his employment.

The administrative law judge made the following findings of fact: "Officer Barge met *an untimely death at 5:35 a.m. on November 7, 1974,* and *that he was in uniform at the time of his death* and *that he had his revolver with him* and *was en route from his home driving in his private automobile to his place of employment* where he was to report for duty as an Officer at 6:30 a.m. on the morning of November 7, 1974, and that at the time of his death, he was outside of the city limits of College Park." (Emphasis supplied.) The administrative law judge and the full board further found "the deceased, Eugene W. Barge, left his residence on the morning of November 7, 1974, and the evidence shows that most of the officers donned their uniforms before driving to work as the evidence shows that there were no private lockers or rooms other than a 15 ft. open area at the police station for changing clothes, but that it was not required that they drive to work in uniform as some of the officers did actually change into uniform from their civilian clothes at the police department in the City of College Park, however, the rules did require that when an officer was in uniform that he wear his .38 revolver. The undisputed evidence shows as a matter of fact that while in Fulton County, Georgia, Officer Barge stopped his 1965 Chevrolet apparently voluntarily and pulled to the side of the paved road and from the physical evidence and photographs introduced into evidence taken

shortly after the death of Officer Barge, he was shot six times, twice with a shotgun or shotguns and four times with a pistol in an apparent planned ambush type murder and the perpetrators of the same have not been determined for prosecution, but the officer was killed instantly."

From the testimony of several officers involved in the investigation it was further found "that Officer Barge had been actively participating in the prosecution of a case against a John Paul Scott and that he had appeared before a Grand Jury and according to the uncontradicted testimony, was the sole witness upon which a conviction of Defendant Scott could be sustained, and that in fact, on two occasions bribe attempts had been made which were reported by Officer Barge to his superiors and according to the testimony of Mr. Daniels, Mr. Scott's trial was to have been held sometime around November 27 or 28, 1974, and this combined with the other admissible evidence shows that the untimely murder of Officer Barge on November 7, 1974, shows that his death arose out of the course of his employment, as apparently the ambush type killing was to silence him as a witness as it was an execution type slaying and was apparently well-planned." After making the finding that the death arose out of the course of the deceased's employment the administrative law judge, and ultimately the full board, proceeded to find that the evidence was insufficient to show that the death occurred "in the course of his employment." For that reason the claim of the widow and minor child was denied.

In this court two principal bases of error are urged: (1) that it was error to reject certain opinion evidence offered to show the cause of the deceased's death and that an in camera hearing should have been held with regard to the admissibility of such evidence; and (2) that the board's finding was error as a matter of law. *Held:*

1. An accident "arises in the course of the employment" within the meaning of the compensation Act when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling his duties *or engaged in doing something incidental thereto. Hardware Mut. Cas. Co. v. Sprayberry,* 69 Ga. App. 196

(25 SE2d 74).

There was evidence offered to show that police officers employed by the City of College Park were on call twenty-four hours a day. Under the rule of continuous employment, a policeman, as an officer of the law, is on duty or on call, that is, subject to duty, for 24 hours out of every day. It is true that he may work only certain shifts of various hours but his whereabouts and the fact that he is subject to call is known to his superiors at all times at any hour or minute of the day. Therefore, he is no less an employee than a bus driver, a traveling salesman or a member of a construction crew working various and sundry hours away from home. See in this connection such cases as *McDonald v. State Hwy. Dept.,* 127 Ga. App. 171 (192 SE2d 919); *Wilson v. Ga. Power Co.,* 128 Ga. App. 352 (196 SE2d 693); *General Fire &c. Co. v. Bellflower,* 123 Ga. App. 864, 867 (3) (182 SE2d 678); *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682 (2), 688 (118 SE 786); and *U. S. Fidelity &c. Co. v. Navarre,* 147 Ga. App. 302.

The policeman involved in the case sub judice was, under the circumstances, certainly killed in line of duty, in uniform, armed, and prepared for action. Simply because he was en route to full and active service on the shift to which he was assigned does not prevent him from being in line of duty, prepared at all times to uphold the duties of an officer of the law, that is, "engaged in doing something incidental thereto," and this is shown since he was in uniform, armed and prepared to carry out his duties. See *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682 (2), supra. Based upon such cases as *McDonald v. State Hwy Dept.,* 127 Ga. App. 171, 173, supra, and like cases cited above, this policeman was doing something incidental to his employment. Although residing outside the city limits of College Park, he was killed or murdered by ambush under mysterious circumstances while outside the city limits on his way to perform his duty shift. Certainly all of the circumstances point out that he was killed in the line of duty. Definitely he was subject to continuous employment and this rule of law should be applied to his case. See Rules & Regulations of the College Park Police Department, and in particular Rules 7, 8, 11, 12 and 35. None of these rules were in anywise shown to be

violated but they were being followed when the officer was killed.

He died under mysterious circumstances and suffered a violent death as a policeman, the circumstances of which can only be determined from the brief circumstantial evidence, and being continuously employed, uniformed and armed, on his way to his duty shift. See *General Acc. Fire &c. Ins. Co. v. Sturgis,* 136 Ga. App. 260 (221 SE2d 51); *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682 (1), 688-689, supra. To the rational mind, after consideration of all the circumstances, more than a mere causal connection was shown between the conditions under which this officer worked (police duty) and his resulting murder (injury resulting in death). The superior court and the board erred in affirming the finding that the evidence showed mere "inference and conjecture" without considering the legal principles of continuous employment and mysterious death in determining it did not arise in the course of his employment, although finding it arose out of his employment. See *Hartford Acc. &c. Co. v. Cox,* 101 Ga. App. 789, 792 (115 SE2d 452); *State Dept. of Labor v. Yates,* 131 Ga. App. 71, 72 (205 SE2d 36). The presumption that this officer's death arose out of and in the course of his employment simply has not been overcome by the evidence.

2. The opinions of experts on any questions of science, skill and trade shall always be admissible, and may be given on the facts as proved by other witnesses and evidence in the record. See Code § 38-1710; *Augusta &c. R. Co. v. Dorsey,* 68 Ga. 228; *Morgan v. Bell,* 189 Ga. 432, 437-438 (5 SE2d 897); *Finley v. Franklin Aluminum Co.,* 132 Ga. App. 70, 72 (207 SE2d 543). Much of the expert opinion evidence which claimant contends was rejected relates to the fact his death arose out of the deceased's employment, and the board found that the death did indeed arise out of the employment but not "in the course of his employment." Thus, if there be error same is harmless. But in considering the voluminous testimony of the expert witnesses, counsel has not adhered to Rule 18 (Code Ann. § 24-3618) in failing to point out the exact parts of the record which is essential to a considera-

tion of the errors complained of. He contents himself with the argument that, "it cannot be ascertained what evidence was excluded." However, our examination of this expert testimony generally fails to disclose any error by the administrative law judge in considering the objections to testimony. With reference to Capt. Waters whose investigation did not relate directly to the death of the deceased, we do not find that the objection was sustained, although the circumstances disclose the court held no in camera determination of this officer's testimony. The record does not disclose that counsel was not allowed to pursue the subject further. As to Sgt. Townsend, counsel has referred to the wrong pages and to eight pages with reference to this witness. An objection was made to his testimony as being opinion testimony based on hearsay. Again, we do not find that the objection was sustained. Thereafter, a few pages further in this witness' testimony counsel himself voluntarily discontinued his examination with reference to his investigation by stating, "I think that is as far as I could expect the court to bear with me on that." As to Lt. Hames, counsel refers to 18 pages of the record for our consideration. All of the interrogation seems to have been a thorough and sifting examination of the witness by counsel in seeking the true facts of this case. An objection was made immediately after consideration of these pages to an irrelevant question with reference to whether a certain criminal "had shot another policeman in his career." We find no error in the sustaining of this objection. As to the examination of the investigator from the district attorney's office, 11 pages are referred to for our examination in which counsel was given a right of broad examination as to the facts within the knowledge of this witness. An objection was made as to the details of a criminal's prior record which was sustained as being irrelevant. We find no error here. As to the special agent for the Federal Bureau of Investigation (FBI), eight pages of his testimony is referred to wherein he testified as to his knowledge of what the term "line of duty" means in which he replied it meant "[a]ny officer wearing a uniform performing official duties," and that if he was killed as a result of that "he had been in performance of his duties."

In other words, his testimony as an expert was that' an officer killed in the circumstances in which the deceased was operating would be in line of duty, that is, arising in the course of his employment. The request for an in camera determination of a criminal investigation by this agent, who testified that further identification of suspects and subjects who are innocent until proven guilty did impede his investigation, was handled properly by the administrative law judge who stated, "I will not insist that he divulge the source of information. I think he is right, confidentiality." Counsel for the claimant did not follow this up by calling for further ruling of the court. Instead, counsel proceeded to ask a hypothetical question as to whether or not in his opinion Officer Barge (the deceased), was in fact killed because of some duties performed as a police officer. This witness' testimony as an expert was that, "he was killed in the line of duty." There is no merit in this enumeration of error.

*Judgment reversed. Deen, P. J., Webb, Smith and Banke, JJ., concur. Bell, C. J., Quillian, P. J., Shulman and Birdsong, JJ., dissent.*

ARGUED JULY 10, 1978 — DECIDED NOVEMBER 28, 1978 — REHEARING DENIED DECEMBER 19, 1978 — ▮▮▮▮▮

*Paul S. Weiner,* for appellant.
*Glaze, McNally & Glaze, George E. Glaze,* for appellee.

QUILLIAN, Presiding Judge, dissenting as to the first division of this opinion.

The words "arises in the course of the employment" relate to the time, place and circumstances under which the accident takes place. *General Fire &c. Ins. Co. v. Bellflower,* 123 Ga. App. 864 (182 SE2d 678).

There was evidence offered to show that police officers employed by the City of College Park were on call twenty-four hours a day. However, according to testimony, the police officers worked definite, scheduled tours of duty (basically 8 hours) and were free to do as they pleased when not working their appointed shift. An "off duty" officer was not required to remain at a specific place

or check in with the department except for court. While an officer might be called on for an emergency he would then receive overtime pay or compensatory time. Nothing in the record reveals that, under the rules and regulations pertinent thereto or by virtue of any special order, the deceased was actually on duty while driving to work.

Since the evidence did not demand a finding that the deceased died in the course of his employment, the finding by the board as affirmed by the superior court should not be reversed by this court.

I respectfully dissent. I am authorized to state that Chief Judge Bell and Judges Shulman and Birdsong concur.